# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE )<br><br>COURTNEY VALENTINE, )<br><br>          Debtor. )<br>_____ )<br><br>DAVID P. GARDNER, )<br>Chapter 7 Trustee, )<br><br>          Plaintiff, )<br><br>v. )<br><br>LAW OFFICE OF LYNDON )<br>B. STEIMEL, a professional )<br>limited liability company, and )<br>LYNDON B. STEIMEL, an )<br>individual, )<br><br>          Defendant. )<br>_____ ) | Case No. 12-20740-TLM<br><br>Chapter 7<br><br><br><br><br><br><br><br><br><br>Adv. No. 13-07004-TLM |

## MEMORANDUM OF DECISION

    Plaintiff, Chapter 7 trustee David P. Gardner ("Plaintiff"), filed a "Motion for Contempt and Sanctions," Adv. Doc. No. 14 ("Motion"), against Defendants Lyndon B. Steimel, an Arizona attorney, and his "Law Office," a professional limited liability company ("Defendants"). Plaintiff's Motion was issued with a 14-day objection period (so-called "negative notice") under LBR 2002.2(d). It

MEMORANDUM OF DECISION - 1

was served by "over-night express mail" on Defendants at an address in Scottsdale, Arizona. Defendants did not file a response. Plaintiff submitted a proposed order after the objection period expired.

Despite the absence of objection, the Court is obligated to determine whether relief may properly be ordered.

**FACTS AND BACKGROUND**

Given the nature of this matter, the Court can only outline the relevant facts by reference to its files and records, of which it takes judicial notice. Fed. R. Evid. 201.[1]

On March 19, 2013, Plaintiff commenced this adversary proceeding against Defendants. Plaintiff alleged in his complaint as follows.[2]

Cortney Valentine filed a petition commencing a chapter 11 case in the District of Arizona on May 26, 2011. Defendants made a notice of appearance as counsel for Valentine on October 5, 2011. Defendants never applied for approval of employment as counsel for Valentine in that chapter 11 case, and filed no Rule

---

[1] By electing to proceed through a motion with notice of a right to object and an opportunity for hearing (*i.e.*, "negative notice" under LBR 2002.2(d)), Plaintiff effectively rests his Motion for contempt sanctions on the papers he filed. Thus, the Court is constrained to evaluate only those factual matters conclusively established by the extant record. Certain other aspects of the record give some procedural context to the arguments, and are freely discussed by the Court.

[2] As default and default judgment were entered, the well-pleaded factual allegations of the complaint are taken as true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (citing *Geddes v. United Fin. Grp.,* 559 F.2d 557, 560 (9th Cir. 1977)).

MEMORANDUM OF DECISION - 2

2016(b) disclosure of compensation. However, Defendants received payments for legal services in the chapter 11 case of "no less than $11,500" as reflected by certain operating reports. The chapter 11 case was subsequently converted to a chapter 7 liquidation, and venue was transferred from the Arizona Bankruptcy Court to this Court. Plaintiff was appointed as Trustee. Plaintiff's causes of action against Defendants sought "turnover" under § 542 of all funds paid by Valentine to Defendants as being property of the estate or, alternatively, recovery of such amounts under § 549 as avoidable post-petition transfers. Plaintiff also contended that the lack of § 327 approval of Defendants as professionals in Valentine's chapter 11 case constituted cause for denial of all fees and disgorgement of any monies paid. Adv. Doc. No. 1.

Plaintiff served the complaint and summons on Defendants and, there being no response, moved for default and default judgment. Plaintiff supported the request for default judgment with an affidavit indicating that discovery from third parties established payments were made to Defendants in an amount of $15,255. Because, *inter alia*, this amount was not pleaded in the complaint, the Court held a hearing in relation to the requested default judgment. *See* Fed. R. 55(b)(2), incorporated by Fed. R. Bankr. P. 7055. Following such hearing, a default judgment was entered on June 5, 2013. Adv. Doc. No. 10 ("Judgment").

The Judgment (1) awarded a money judgment to Plaintiff and against

MEMORANDUM OF DECISION - 3

Defendants jointly and severally for $15,225.00 under §§ 549 and 550, and required turnover of such amounts under § 542; (2) recognized that the amounts awarded did not foreclose or prohibit Plaintiff from seeking, through appropriate process and procedure, turnover of other property of the estate and/or avoidance of other transfers; (3) ordered Defendants to provide within 21 days of the Judgment an accounting of all property of the estate that was paid to, received by, or otherwise in the possession or control of Defendants at any time after Valentine's petition for relief.

Plaintiff thereafter on July 9, 2013, applied for approval of employment of the Arizona law firm Bueler Jones, LLP, to assist with the collection of the Judgment, representing that this firm had 18 years of experience in collecting judgments in Arizona. Case No. 12-20740-TLM, Doc. No. 324. That application was granted and the employment approved on August 7, 2013. *Id.* at Doc. No. 341.

Plaintiff sought allowance in the chapter 7 case of § 331 compensation for Bueler Jones, LLP. Though Plaintiff's application was inefficiently pursued, the firm was ultimately awarded $1,500.00 in compensation and $918.00 in expenses. *See id.* at Doc. Nos. 347-48, 351, 356-57, 359, 361, 377, 378. As a part of such process, Plaintiff was required to supplement the application with copies of certain documents or pleadings filed in the Arizona state court that were related to

MEMORANDUM OF DECISION - 4

enforcement of the Judgment. Those documents, *id.* at Doc. No. 361, reflect that, after the Judgment was domesticated in Arizona, Defendants moved to set it aside. *Id.* at 16-18. In addition to alleging certain defects in Plaintiff's compliance with Arizona procedures, Defendants argued in their state court motion:

> [T]here was no way to defend [the adversary proceeding] or file any pleadings [in it] because the pleadings had to be filed electronically and the Clerk of the District of Idaho Bankruptcy Court would not allow Steimel to file any responses or pleadings without a Pro Hac Vice in place. Steimel was unable to get a Pro Hac Vice in place by any means. Steimel then filed a pleading with the Court but it was rejected or became untimely because it was not electronically filed.
>
> Therefore Defendants should have the opportunity to actually defend the adversary action in the Valentine bankruptcy upon the merits of the case including the fact that he [Steimel] was told by Valentine that the money used to pay his fees was separate property or not property of the Estate. Moreover, Defendants' records do not indicate that he received anywhere close to $15,000.00 for bankruptcy fees.

*Id.* at 17.[3]

Plaintiff's submissions in this § 331 application process did not reflect the

---

[3] Though not directly critical to the present issues, the Court notes that Defendant Steimel was entitled, as is any natural person, to appear and defend in this Court on his own behalf (even though his professional corporation was not). *See* LBR 9010.1(e)(1), (3). While Defendant Steimel was (and is) not entitled to use ECF privileges in this District because he has not been admitted to this District's bar, *see* LBR 9010.1(a), (b); LBR 5003.1, he nonetheless could have filed pleadings in paper form. He did not. (His allegations of a paper submission rejected by the Clerk is not borne out by the record; any such pleading or paper would not have been refused, *see* Rule 5005(a)(1), but would have been noted on the docket as received and addressed by the Court.) Defendant Steimel also could have sought to be admitted pro hac vice, after which he could have registered for ECF and electronically filed documents. *See* LBR 9010.1(d). He did not. He could have had an attorney admitted to this Court's bar appear for him and for his professional corporation. He did not. And despite raising issues regarding relief from the Judgment in Arizona state court, he never sought such relief – or any other relief – in this Court.

MEMORANDUM OF DECISION - 5

resolution of the parties' motions by the Arizona state court. And nothing further addressing this issue was filed in either the chapter 7 case or this adversary proceeding until the pending Motion.

Plaintiff's present Motion alleges that Defendants' motion to set aside the Judgment was denied by the Arizona court. He contends that, thereafter, Defendants still refused to pay the Judgment amount or to comply with the Judgment's ordered accounting. Plaintiff alleges that garnishment commenced in January 2014, and that Defendants filed objections to the garnishment that were scheduled for a February 18, 2014, state court hearing. Motion at 3.[4]

Plaintiff's Motion further alleges that "Defendants have continued to fail to comply with this Court's order by continuously refusing to turnover the funds to the Trustee, filing actions to set aside or prevent the collection of the judgment *in bad faith, and willfully* refusing to provide an accounting of the property of the estate property [*sic*] as ordered." *Id.* at 4 (emphasis added).

The allegations of the Motion are not supported by affidavit or similar submissions.[5] And there has been no evidence presented at any hearing.

---

[4] The Motion was filed in this Court on February 18, leaving unanswered the question of how the February 18 state court hearing concluded. To date, nothing was been filed clarifying the status of the Arizona collection efforts.

[5] A "declaration" of Plaintiff's counsel was filed with the Motion. *See* Adv. Doc. No. 15 ("Declaration"). However, the Declaration only serves to present an abbreviated summary of the alleged fees and expenses incurred by such counsel and Arizona local counsel "in attempting to collect on this Court's judgment[.]" In addition to not addressing the facts of Plaintiff's and

(continued...)

MEMORANDUM OF DECISION - 6

**DISCUSSION AND DISPOSITION**

    **A.    Contempt powers generally**

The Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") recently summarized authorities on the bankruptcy court's contempt powers. *Dhaliwal v. Singh (In re Singh)*, 2014 WL 842102 (9th Cir. BAP Mar. 4, 2014). The BAP recognized that, under Ninth Circuit precedent, the bankruptcy courts have the power to sanction "under their civil contempt authority under § 105(a)" and under "their inherent sanction authority." *Id.* at *7 (citing *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052, 1058 (9th Cir. 2009)). While the inherent sanction authority is also recognized under § 105(a), it differs from the civil contempt authority and the two are not interchangeable. *Id.* (citing *Lehtinen*, 564 F.3d at 1058, and *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1196 (9th Cir. 2003)).

    **B.    Inherent sanction authority of the Court**

Under the inherent sanction authority, the bankruptcy court may sanction a "broad range" of conduct, including improper litigation tactics, vexatious conduct, bad faith, wanton conduct, willful abuses of judicial process, and litigation for an

---

[5](...continued)
Defendants' actions in Arizona regarding the Judgment, this declaration is also inadequate were the Court to reach compensation issues. The declaration clearly lacks the detail needed to address compensation of Plaintiff's counsel (Winston & Cashatt) and Arizona counsel (Bueler Jones, LLP), both § 327 estate-employed professionals who are compensated under § 330 and § 331 standards.

MEMORANDUM OF DECISION - 7

improper purpose or for oppressive reasons. *Singh*, *supra* at \*7 (citing *Dyer* and *Lehtinen*). However:

> In order to impose sanctions under its inherent sanction authority, the bankruptcy court must find bad faith or willful misconduct. "[B]ad faith or willful misconduct consists of something more egregious than mere negligence or recklessness." *Lehtinen*, 564 F.3d at 1058 (quoting *Dyer*, 322 F.3d at 1196). The bankruptcy court must specifically find bad faith or conduct tantamount to bad faith. *Lehtinen*, 564 F.3d at 1061.

*Singh*, 2014 WL 842102 at \*8.

The fundamental problem with Plaintiff's attempted invocation of the inherent sanction authority is that he failed to present any evidence establishing Defendants' conduct is in "bad faith" or constitutes "willful misconduct." *Dyer* notes that the inherent sanction authority is a remedy "[i]n extreme cases" where the conduct of the contemnor "rises to the level of 'bad faith.'" 322 F.3d at 1190 n.14. As *Dyer* further holds, before imposing sanctions under its inherent sanctioning authority, "a court must make an explicit finding of bad faith or willful misconduct." *Id.* at 1196. A "finding" connotes fact. *See* Fed.R.Civ.P. 52(a)(1) (in an action without a jury, "the court must find the facts specially"), incorporated by Rule 7052 and applicable here under Rule 9014(c).

Disputed factual issues in contested matters require presentation of evidence in open court pursuant to Rule 9014(d), and affidavits are insufficient to make out a prima facie case absent applicable rule or agreement of the parties. *In*

MEMORANDUM OF DECISION - 8

*re Hart*, 2013 WL 693013, *2 (Bankr. D. Idaho Feb. 26, 2013). Arguments and allegations by counsel are not evidence. *In re McKay*, 2013 WL 66263, *3-4 (Bankr. D. Idaho Jan. 4, 2013).

The Motion's assertions about Defendants' "bad faith" attempts to prevent collection and "willful refusal" to account are not entitled to evidentiary weight.[6]

Given the heightened showing required in the Ninth Circuit for invocation and use of the Court's inherent contempt power, and the requirement that this Court make, on a competent record, explicit findings of bad faith and willfulness, Plaintiff's submissions are inadequate. Relief under the Court's inherent contempt sanctioning authority will be denied.

### C. Civil contempt authority

Under its civil contempt authority, the bankruptcy court may sanction violations of a specific order. To find a party in civil contempt, the court must find that the contemnor "violated a specific and definite order and that he had sufficient notice of its terms and that he would be sanctioned if he did not comply." *Singh*,

---

[6] Even if they were to be given some weight, they are insufficient to establish Defendants' conduct meets the threshold required for the Court's exercise of contempt powers. Those allegations would tend to show that Defendants have not paid the judgment and, indeed, have requested relief in the Arizona state court where the judgment was domesticated, seeking relief from the judgment (allegedly unsuccessfully) or asserting defenses to garnishment (which were unresolved when this Motion was filed). While Plaintiff alleges that Defendants "refused" to comply with the judgment, his assertion is bereft of detail; it can as easily be interpreted as Defendants "failed" to comply or simply "did not" comply. Plaintiff's further assertions and allegations that Defendants' filings in Arizona were made "in bad faith" have no explanation or foundation.

MEMORANDUM OF DECISION - 9

2014 WL 842102 at *7 (quoting *Hansbrough v. Birdsell (In re Hercules Enters.)*, 387 F.3d 1024, 1028 (9th Cir. 2004)).

"The movant bears the burden of demonstrating *by clear and convincing evidence* that the contemnor violated the specific and definite order of the court." *Id.* (emphasis added). The movant must also prove the second element, which is that the contemnor had sufficient notice that he would be sanctioned for noncompliance. *Id.* at *8.

As before, Plaintiff has provided no evidence, much less clear and convincing evidence, to meet his burden. As noted, the failure to present evidence when a party is required to meet an evidentiary burden is fatal to the party's argument. *See Hart,* 2013 WL 693013 at *2.

### 1. Civil contempt and the collection of money judgments

An additional issue is implicated. The Ninth Circuit in *Shuffler v. Heritage Bank*, 720 F.2d 1141 (9th Cir. 1983), noted that sanctions for civil contempt can only be imposed for one or both of two distinct purposes: (1) to compel or coerce obedience to a court order, or (2) to compensate the contemnor's adversary for injuries resulting from the contemnor's noncompliance. *Id.* at 1147. However, it concluded that a civil contempt fine was improper to the extent the fine was intended to coerce the judgment defendant (Shuffler) to pay a prior judgment to the plaintiff (Heritage):

MEMORANDUM OF DECISION - 10

> The proper means for Heritage to secure compliance with a money judgment is to seek a writ of execution, not to obtain a fine of contempt for the period of non-payment. We recognize that Rule 69(a), by stating that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, *unless the court otherwise directs*," Fed.R.Civ.P. 69(a) (emphasis added), seemingly leaves open the possibility of securing payment of a money judgment through the imposition of a contempt sanction. Nonetheless, we do not interpret the exception to execution to permit a federal court to "enforce a money judgment by contempt or methods other than a writ of execution, except in cases where established principles so warrant." *See* 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 69.03[2] (2d ed. 1982); *see Gabovitch v. Lundy*, 584 F.2d 559, 560 n.1 (1st Cir. 1978) ("equitable remedies, even those permitted by Rule 70, are seldom appropriate aids to execution of a money judgment")[.]

*Id.* at 1147-48. "Consequently, to the extent the order of contempt was intended to enforce payment, it cannot be sustained." *Id.* at 1148. *See also Rosales v. Wallace (In re Wallace)*, 490 B.R. 898, 906-07 (9th Cir. BAP 2013) (proper means of securing compliance with a money judgment is a writ of execution, not contempt; citing *Shuffler*, and *Hilao v. Estate of Marcos*, 95 F.3d 848, 854 (9th Cir. 1996)).[7]

At bottom, the Court views the Motion as just such an attempt to use contempt as an improper means to collect a previously ordered money judgment.[8]

---

[7] The BAP in *Wallace* noted a limited exception or distinction where the contempt power is used to enforce a sanction for "misconduct" which it found was not an "ordinary money judgment." *Id.* at 907-08. That distinguishing characteristic, in *Wallace* and in the cases on which the Panel relied, is not present here.

[8] That this is a collection vehicle is also illustrated by the request made for accruing post-judgment interest as a part of the "contempt." (Though the form of Judgment entered here did not reference post-judgment interest, 28 U.S.C. § 1961 operates even in the absence of direct reference. *Tinsley v. Sea-Land Corp.*, 979 F.2d 1382, 1384 (9th Cir. 1992) (citing *Waggoner v. R. McGray, Inc.*, 743 F.2d 643, 644 (9th Cir. 1984)).

MEMORANDUM OF DECISION - 11

The proper remedy is to execute on the Judgment. That is not only consistent with the rules and the case law, it is obvious.

Moreover, even if civil contempt were available to pursue enforcement of a money judgment, Plaintiff has failed to justify its use when traditional judgment enforcement and collection methods are not only available in Arizona, but already being pursued. Merely because such efforts may be difficult is scant reason to overlay that enforcement with simultaneous federal contempt processes and orders. The fact that the Arizona efforts were ongoing – and unresolved – at the precise time Plaintiff attempted to invoke this Court's contempt authority is adequate reason to deny the Motion.

The Motion's attempted invocation of the Court's civil contempt authority as a means of collection of the Judgment will be denied.

### 2. Civil contempt and the enforcement of orders

A component of the Judgment was an order that Defendants provide an "accounting" of all monies paid them by Valentine. In theory, this order may be amenable to enforcement through civil contempt powers, as it is different from the "money judgment," which is not.

As previously noted, in order to utilize the Court's civil contempt powers, Plaintiff must demonstrate not only that Defendants violated a specific and definite order but also that they had notice that they would be sanctioned if they did not

MEMORANDUM OF DECISION - 12

comply with the terms of that Order. While there may be an argument that Plaintiff's approach of filing a motion on negative notice was sufficient to advise Defendants of possible civil contempt sanctions, so holding minimizes the importance of clarity, notice, and due process that animates the case law on this subject. Other approaches – such as orders to show cause – are often employed to meet these criteria and facilitate hearing where the requisite evidentiary basis required to impose such sanctions can be established.

Typically, if Plaintiff wanted the Court to impose civil contempt sanctions to address Defendants' conduct in failing to account, Plaintiff would request that the Court issue an Order to Show Cause why sanctions should not be imposed for violation of the Court's order. Such a request would address and clearly explain, with reference to all material facts and law, the violation of the order and the exact sanctions sought – limiting the sanctions to the compensatory costs actually incurred due to the defendant's failure to comply and/or coercive sanctions to motivate compliance. Here, the Motion provides some of the necessary information, but clarity and quality of notice are lacking, in part because Plaintiff conflated collection efforts on the money judgment with the contempt remedy for the failure to perform as ordered.[9]

---

[9] For example, it appears some portions of the requested fees were incurred in attempting to collect the monetary judgment, not in pursuit of Defendants' compliance with the ordered accounting. In addition, some of the suggested fees are estimated or projected, but not actually yet incurred. And finally, the necessary detail of the time spent, and on what tasks, is

(continued...)

Thus, Defendants are not on notice of the exact sanctions sought against them for the alleged civil contempt of this Court's ordered accounting. The Court concludes, for the foregoing reasons, that the Motion will be denied. It will so order, but without prejudice to Plaintiff filing a request for the Court to enter a Plaintiff-proposed Order to Show Cause that would provide the information necessary to give Defendants adequate notice. Such an Order to Show Cause will allow Defendants time to respond and, ultimately, would result in an appropriate evidentiary hearing to establish a competent record, and a basis for the Court's exercise of its civil contempt authority.

**CONCLUSION**

Upon the foregoing, the Motion shall be denied in all regards. An appropriate order will be entered in accord with this Decision.

DATED: April 3, 2014



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

---

[9](...continued)
lacking, impeding the required assessment of the reasonableness of the fees.

MEMORANDUM OF DECISION - 14